UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
EMANUEL MCADOO, also known as
Emmanuel Smith,

                           Plaintiff,

    -v-                                              9:10-CV-355

MARY ANN JAGIELLO, in her individual
capacity,

                           Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                       OF COUNSEL:

EMANUEL MCADOO
Plaintiff, Pro Se
1563 Sterling Place
Apt. 7C
Brooklyn, NY 11213

HON. ERIC T. SCHNEIDERMAN               JUSTIN C. LEVIN, ESQ.
Attorney General of the                         Asst. Attorney General
  State of New York
Attorney for the Defendant
Department of Law
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Emanuel McAdoo ("plaintiff" or "McAdoo"), a former New York state prison inmate and current parolee proceeding pro se and in forma pauperis, commenced this action on March 26, 2010, pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendant Mary Ann

Jagiello ("defendant" or "Jagiello"), a senior parole officer with the New York State Division of Parole ("NYDOP"), violated his due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. Plaintiff seeks monetary damages. Defendant has moved to dismiss plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant also requests a protective order, pursuant to Federal Rule of Civil Procedure 26(c), staying discovery pending the ultimate resolution of this motion. Plaintiff opposes the motion.

## II. FACTUAL BACKGROUND

The following pertinent facts, taken from the complaint, are accepted as true for purposes of this motion to dismiss.

On September 16, 1999, plaintiff was released from the custody of the New York State Department of Correctional Services and placed on parole supervision. Thereafter, plaintiff's parole supervision was transferred from New York to Florida pursuant to New York Executive Law section 259-m. On January 25, 2000, while on parole, McAdoo was arrested on drug charges in Florida. The NYDOP issued a warrant, lodged as a detainer, against plaintiff on January 18, 2001. On February 8, 2001, plaintiff was found guilty of the Florida drug charges after a jury trial.

Also in February 2001, plaintiff waived his right to a preliminary parole revocation hearing in New York. While incarcerated in Florida at some point in 2001, plaintiff requested that the NYDOP hold a final revocation hearing in his absence. Defendant sent plaintiff a letter, dated December 10, 2003, informing McAdoo that his final revocation hearing could not be held in absentia. This letter further advised: "[Y]ou must be physically present within New York to have a Final Hearing. Therefore, no decision can be made regarding your

violation and the remaining time you have on your sentence, until you are returned to New York." Plaintiff's sentence was subsequently "extended" by five years.[1]

## III. DISCUSSION

Plaintiff asserts that defendant's failure to conduct a final parole revocation hearing within 90 days of his request to have such a hearing proceed in his absence constitutes a deprivation of his due process rights. Defendant argues that McAdoo's claim is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994), as well as the statute of limitations and fails to state a claim upon which relief can be granted. Jagiello further maintains that she is entitled to qualified immunity.

### A. Motion to Dismiss—Legal Standard

To survive a 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Although a complaint need only contain "a short and plain statement of the claim showing the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).

Dismissal is appropriate only where plaintiff fails to provide some basis for the allegations that support the elements of his claims. See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its

---

[1] Plaintiff does not explain how his sentence was extended. Also noticeably missing from the complaint are the terms of his Florida sentence, how long he remained incarcerated in Florida, when he returned to New York, when—if ever—a final parole revocation hearing was held, and whether he was reincarcerated in New York.

face"). When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Additionally, particular deference should be given to a pro se litigant's complaint when applying the above standard. Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007).

### B. Plaintiff's Response to Defendant's Motion to Dismiss

Defendant argues that plaintiff's response to the motion to dismiss should not be considered as it was filed late and without a proper affidavit of service. Indeed, on October 21, 2010, United States Magistrate Judge Baxter granted plaintiff an extension of time to file his response by November 1, 2010. However, plaintiff's response was not filed until November 15, 2010. See Dkt. No. 15.

Rule 7.1(b)(3) of the Local Rules for the Northern District of New York states: "The Court shall not consider any papers required under this Rule that are not timely filed or are otherwise not in compliance with this Rule unless good cause is shown." However, it is well-established that pro se plaintiffs are "entitled to certain latitude," especially when facing a dispositive motion. Jemzura v. Pub. Serv. Comm'n, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.); see also Murray v. Goord, 668 F. Supp. 2d 344, 353 (N.D.N.Y. 2009) (Scullin, S.J. & Peebles, M.J.).

The docket sheet indicates that there was difficulty sending documents to McAdoo. Mail was returned as undeliverable in May and September 2010. Dkt. Nos. 5, 12. Further, plaintiff changed addresses three times between April and October 2010. Dkt. Nos. 4, 11, 14. Moreover, although defendant complains about the completeness of the affidavit of service, she clearly received plaintiff's response and was afforded an opportunity to reply to

same. Indeed, attached to defendant's reply is a copy of the envelope—postmarked November 12, 2010—in which McAdoo mailed his response to defense counsel. Dkt. No. 16. Given the latitude owed to pro se litigants, and in an abundance of caution, plaintiff's response will be considered.

### C. Applicability of Heck v. Humphrey

Defendant argues that McAdoo's claim is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994). In Heck, the Supreme Court held that a plaintiff cannot use a § 1983 action to expressly or implicitly challenge the validity of a conviction or sentence unless such conviction or sentence had already been reversed, called into doubt by the issuance of a habeas corpus petition, or otherwise invalidated. Id. at 486–87, 114 S. Ct. at 2372. A plaintiff seeking to challenge the legality of his conviction or sentence must do so via a habeas petition after exhausting available state remedies. Id. at 489, 114 S. Ct. at 2373. However, Heck acknowledged that a plaintiff can bring a § 1983 claim to seek damages for a defendant's use of the "wrong procedures, not for reaching the wrong result" so long as such a claim does not call into question the lawfulness of plaintiff's continued confinement. Id. at 482–83, 114 S. Ct. at 2370. In other words, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the [§ 1983] complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487, 114 S. Ct. at 2372.

Importantly, Heck "does not bar a § 1983 action that, at most, increases the *likelihood* that a plaintiff will eventually be able to overturn a still-outstanding conviction, but which does not go so far as to *necessarily* demonstrate the conviction's invalidity." McKithen

v. Brown, 481 F.3d 89, 102 (2d Cir. 2007). The Supreme Court has clarified that "the proper inquiry is whether 'victory for the prisoners [would] necessarily [mean] immediate release or a shorter period of incarceration.'" Id. (quoting Wilkinson v. Dotson, 544 U.S. 74, 80, 125 S. Ct. 1242, 1247 (2005)). That a victory in a § 1983 suit may be helpful in a subsequent challenge to the plaintiff's conviction or confinement is "irrelevant." Id.

The principles detailed in Heck and its progeny have been applied to parole revocation cases. See, e.g., Sumter v. Marion, No. 98 Civ. 2744, 1999 WL 767426, at *5 (S.D.N.Y. Sept. 28, 1999) (dismissing § 1983 claim because to find in plaintiff's favor would require finding that defendants falsified evidence at the revocation hearing, thus invalidating the result); Sealey v. Fishkin, No. 96 CV 6303, 1998 WL 1021470, at *5 (E.D.N.Y. Dec. 2, 1998) (dismissing § 1983 claim alleging police officer made false statements to parole officials, ultimately leading to parole revocation).

McAdoo alleges that defendant followed improper procedure, not that the ultimate revocation of his parole was wrong.[2] Indeed, he seeks monetary damages for "emotional injury" as opposed to declarative relief invalidating his revocation or an injunction preventing his continued parole supervision. Moreover, a finding that Jagiello violated McAdoo's due process right to a timely final revocation hearing does not necessarily imply that his subsequent parole revocation was invalid. This is noticeably different from a claim that the revocation hearing itself was tainted by the reliance on false evidence as in Sumter or a claim that the revocation was based on false statements made by an arresting police officer as in

---

[2] Nor could McAdoo succeed on a claim that his parole revocation was improper. McAdoo admits in his complaint that he was found guilty of the drug charges following a jury trial in Florida. Compl., Dkt. No. 1, ¶ 6(4). As it is well-established that a parolee's conviction of another crime "is adequate, in and of itself, to support a revocation" of parole, a challenge to the actual revocation of plaintiff's parole would fail. People ex rel. Maggio v. Casscles, 28 N.Y.2d 415, 418 (N.Y. 1971).

...

Sealey. A finding in favor of the Sumter and Sealey plaintiffs obviously invalidates the determination made at their final revocation hearings. McAdoo does not allege that the decision to revoke his parole was based on faulty evidence or inaccurate information relating to his Florida drug charges. His sole claim is that defendant refused to conduct a timely revocation hearing in his absence. A finding in his favor, therefore, would not undermine the validity of his revocation nor necessitate an immediate change to his current sentence.

Accordingly, defendant's assertion that Heck v. Humphrey mandates dismissal of McAdoo's § 1983 action is rejected.

### D. Statute of Limitations for § 1983 Claims

Jagiello next argues that plaintiff's cause of action is time-barred. The statute of limitations for § 1983 claims is equivalent to the applicable state law statute of limitations for personal injury tort claims. Wallace v. Kato, 549 U.S. 384, 387, 127 S. Ct. 1091, 1094 (2007). The statute of limitations period for a § 1983 claim in New York is three years. Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). This period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Covington v. City of New York, 171 F.3d 117, 121 (2d Cir. 1999) (internal quotation marks omitted).

Making all reasonable inferences in plaintiff's favor, it is assumed that he first learned of his alleged injury upon receipt of defendant's letter in December of 2003. The statute of limitations for any associated § 1983 claim thus expired in December of 2006. As McAdoo did not file this action until March of 2010, it is clearly untimely. In response, plaintiff asserts that the statute of limitations "is not applicable" because he suffered from mental

illness—including schizoaffective disorder, bipolar disorder, post-traumatic stress disorder, and drug addiction—since 1986.

The tolling of the statute of limitations for § 1983 claims is governed by state law tolling provisions. Wallace, 549 U.S. at 394, 127 S. Ct. at 1098. New York law tolls the statute of limitations for persons suffering from "insanity at the time the cause of action accrues." N.Y.C.P.L.R. § 208. If the disability of insanity ceases, the party has three years thereafter to file a cause of action. Id. This tolling statute is to be "narrowly interpreted." McCarthy v. Volkswagen of Am., 55 N.Y.2d 543, 548 (N.Y. 1982).[3] In order to benefit from section 208, plaintiff must establish that he was "unable to protect [his] legal rights because of an over-all inability to function in society." Id.

When determining whether a party suffered from insanity within the meaning of this statute, a court is to consider "all surrounding facts and circumstances relevant to the claimant's ability to safeguard his or her legal rights." Cerami v. City of Rochester Sch. Dist., 82 N.Y.2d 809, 812 (N.Y. 1993). "Apathy, depression, posttraumatic neurosis, psychological trauma and repression therefrom, or mental illness alone are insufficient to invoke the tolling provisions of § 208; the mental disability must be severe and incapacitating." McEachin v. City of New York, No. 03-CV-6421, 2007 WL 952065, at *4 (E.D.N.Y. Mar. 29, 2007) (internal quotation marks omitted). Nor is an allegation that plaintiff was "mentally ill" when the claim accrued sufficient to trigger section 208. Murphy v. West, 533 F. Supp. 2d 312, 316 (W.D.N.Y. 2008). Moreover, there is no "*per se* toll for psychiatric hospitalization" under New York law. Joseph S. v. Hogan, 561 F. Supp. 2d 280, 315 (E.D.N.Y. 2008). Finally, plaintiff

---

[3] The McCarthy Court noted that the term "insanity" was intentionally used instead of the phrase "mental illness" to prevent "unwarranted extensions of the time within which to commence an action." Id.

must also demonstrate that the disability of insanity continued throughout the relevant statutory period. Libertelli v. Hoffman-La Roche, Inc., 565 F. Supp. 234, 237 (S.D.N.Y. 1983).

It cannot be determined whether McAdoo suffered from the disability of insanity within the meaning of section 208 in December 2003 or, if so, how long this condition persisted to prevent him from pursuing his legal rights. McAdoo submitted medical records—dated April 2009—indicating that he was diagnosed with schizoaffective and bipolar disorders in 2006. Dkt. No. 15, Ex. B. These records further document a history of drug addiction and hospitalizations for depression in 2006. Id. What these records fail to reveal, however, is how plaintiff's functioning was impacted by these conditions. Moreover, plaintiff maintains that he suffered from mental illness and drug addiction since 1986. It is unknown what part these conditions played in plaintiff's failure to pursue this action in a timely fashion. Nothing in the complaint or plaintiff's memorandum of law indicates what level of functioning he was capable of between the time he received defendant's letter in December 2003 and when the statute of limitations ended three years later. Nor is it clear when plaintiff's alleged insanity ceased.[4] In the absence of such information, it cannot be determined, as a matter of law, whether plaintiff's condition during the relevant time period met the high standard of "insanity" for purposes of section 208's tolling provision.

Courts often conduct evidentiary hearings to determine whether a plaintiff's condition constitutes insanity. See, e.g., Shonowsky v. City of Norwich, No. 3:10-CV-745, 2010 WL 4609305, at *2–3 (N.D.N.Y. Nov. 4, 2010) (McAvoy, S.J.) (reserving decision

---

[4] McAdoo's alleged insanity obviously ended as he was able to file this action in March 2010 as a pro se plaintiff.

- 9 -

pending a hearing on whether plaintiff's mental condition warrants tolling under section 208); Kelly v. Solvay Union Free Sch. Dist., 116 A.D.2d 1006, 1006 (N.Y. 1986) ("[U]nless the proof of insanity is conclusive, the court should conduct a fact-finding hearing to determine the extent of plaintiff's disability."). Such a hearing may be necessary in this case if not for the fact that plaintiff's claim can, and will, be dismissed on the merits.

Accordingly, the statute of limitations issue need not be decided for purposes of this motion.

### E. Due Process Claim

McAdoo's due process claim is simply that defendant refused to hold a final parole revocation hearing in New York within 90 days of his request for such a hearing to occur in his absence.[5]

In order to survive a motion to dismiss a due process claim under § 1983, a plaintiff "must allege the deprivation of a constitutionally protected interest." Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir. 2002). The Supreme Court has held that parole revocation impacts a protected liberty interest. Morrissey v. Brewer, 408 U.S. 471, 482, 92 S. Ct. 2593, 2601 (1972). Parolees must be provided both a preliminary hearing to determine the existence of

---

[5] In support of this claim, plaintiff cites White v. N.Y. Div. of Parole, 60 N.Y.2d 920 (N.Y. 1983). In White, the New York Court of Appeals held that Executive Law section 259-i "required" the Division of Parole to proceed with a final revocation hearing in plaintiff's absence within 90 days of his knowing and intelligent waiver of his right to be present at the hearing. Id. at 922. Case law at the time of this holding required strict compliance with the 90-day time limit—even if the parole violator was imprisoned in a different state. See People ex rel. Gonzales v. Dalsheim, 52 N.Y.2d 9, 14–15 (N.Y. 1980) (cited and relied on by the White Court). In response to these strict holdings, the legislature amended the Executive Law in 1984 "to bring New York law into congruence with the broader Federal due process requirements." People ex rel. Brown v. N.Y. Bd. of Parole, 139 A.D.2d 548, 550 (N.Y. App. Div. 2d Dep't 1988); see also People ex rel. Matthews v. N.Y. Div. of Parole, 95 N.Y.2d 640, 645 (N.Y. 2001) (noting that the law was amended "to facilitate the prosecution of parole violators held in out-of-state facilities"). As explained below, the amendments provided for the tolling of the 90-day requirement until the parole violator returned to New York. See N.Y. EXEC. LAW § 259-o(4) (effective November 1, 1984). Therefore, McAdoo's reliance on White is misplaced.

probable cause that a violation has occurred and a final revocation hearing—affording the parolee notice, an opportunity to be heard and confront witnesses, and an impartial hearing officer—within "a reasonable time" thereafter.  Id. at 488, 92 S. Ct. at 2603–04.

New York law dictates that final parole revocation hearings generally must be held within 90 days of the probable cause determination or, as in this case, the date on which the parolee waived his right to a preliminary hearing.  N.Y. EXEC. LAW § 259-i(3)(f)(i).  However, New York parolees who are supervised in other states—and subsequently incarcerated in such other states on new criminal charges—are not entitled to a final revocation hearing until they return to New York.  Id. § 259-o(4); see also People ex rel. Freeman v. Warden of Anna M. Kross Ctr., 208 A.D.2d 478, 478 (N.Y. App. Div. 1st Dep't 1994) (interpreting section 259-o(4) "to mean that *all* New York parole violators who [have] been released to other States pursuant to Executive Law § 259-m, and who [are] later incarcerated in such States, [are] not entitled to final parole revocation hearings until within 90 days after their return to New York" (internal quotation marks and alterations omitted)).

Therefore, McAdoo was not entitled to a final revocation hearing while he remained in custody in Florida.  See Noble v. N.Y. Div. of Parole, 35 A.D.3d 979, 980 (N.Y. App. Div. 3d Dep't 2006) (holding that the DOP "is not obligated to provide petitioner with a preliminary or final parole revocation hearing until he completes his sentence in [another state] and that state relinquishes custody of him").  Plaintiff does not allege that defendant failed to conduct a final revocation hearing within 90 days of his return to New York.  Indeed, as noted above, plaintiff does not provide any facts concerning his return to New York, how his parole was formally revoked, or when his sentence was "extended."

Accordingly, plaintiff's due process claim will be dismissed.

### F. Qualified Immunity

Defendant argues that she is entitled to qualified immunity, which generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). However, if no constitutional right would have been violated were the allegations established, "there is no necessity for further inquiries concerning qualified immunity." Los Angeles Cnty. v. Rettele, 550 U.S. 609, 616, 127 S. Ct. 1989, 1994 (2007) (internal quotation marks omitted).

Accordingly, the issue of qualified immunity need not be addressed because, as discussed above, plaintiff fails to allege a plausible constitutional claim against Jagiello.

### G. Defendant's Request for a Protective Order

Finally, defendant requests an order pursuant to Federal Rule of Civil Procedure 26(c) staying discovery pending the outcome of this motion to dismiss. Rule 26(c) authorizes a court to issue an order protecting a party from, inter alia, "undue burden or expense." Fed. R. Civ. P. 26(c)(1). Further, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36, 104 S. Ct. 2199, 2209 (1984).

As the complaint will be dismissed in its entirety, good cause exists to protect Jagiello from further undue burden and expense. Accordingly, discovery will be stayed in the event an appeal of this order is taken.

## IV. CONCLUSION

Accepting plaintiff's allegations as true and making all reasonable inferences in his favor, he fails to state a plausible claim on which relief can be granted. Defendant's refusal

to conduct a final parole revocation hearing in plaintiff's absence within 90 days of his request for such a hearing did not amount to a deprivation of McAdoo's due process rights. Indeed, McAdoo was not entitled to a final revocation hearing until he returned to New York.

Accordingly, it is

ORDERED that

1. Defendant's motion to dismiss is GRANTED;

2. Plaintiff's complaint is DISMISSED in its entirety; and

3. Defendant's motion for a stay of discovery pending the ultimate outcome of this motion is GRANTED.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

United States District Judge

Dated: April 25, 2011
       Utica, New York.